UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ALIZEE WICKENHEISER,

    Plaintiff,

v.

UP HEALTH SYSTEM
MARQUETTE, et al.,

    Defendants.
_____/

Case No. 2:17-cv-84
HON.  GORDON J. QUIST

## REPORT AND RECOMMENDATION

Plaintiff Alizee Wickenheiser, a non-prisoner *pro se* litigant, filed this action against UP Health System Marquette and three of its employees—Psychiatrist Jonathan Harbin, Neurologist Cameron Wilcox, and Social Worker Richard Kochis.  (ECF No. 1.)  Plaintiff sues Defendants in their official and individual capacities and seeks declaratory and injunctive relief, as well as monetary damages.  The Court has granted Plaintiff leave to proceed *in forma pauperis* under 28 U.S.C. § 1915.  Pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), the undersigned recommends that several of Plaintiff's claims be dismissed for failure to state a claim on which relief may be granted.

In her seventy-one page complaint, Plaintiff describes the events that give rise to her various claims.  However, the description of the events are far from clear.  Plaintiff is a Northern Michigan Student (NMU), who identifies as a transgender woman.  On November 5, 2015, Plaintiff was arrested at NMU because she was involved in some kind of altercation.  Plaintiff denies that she did anything wrong.  It appears that Plaintiff previously sued the

arresting officers in state court for various constitutional violations, but the case may have been dismissed.

Shortly after being arrested, Plaintiff was involuntarily committed to UP Health System Marquette.[1]  She remained at the UP Health System Marquette for approximately two months.  While at the UP Health System Marquette, Plaintiff was treated by Dr. Harbin and Dr. Wilcox.  Plaintiff asserts that she never consented to a doctor/patient relationship with Dr. Harbin or Dr. Wilcox, and "no professional relationship existed."  Dr. Harbin diagnosed Plaintiff with paranoid schizophrenia.  Dr. Wilcox administered medication consistent with Dr. Harbin's diagnosis.  Moreover, Richard Kochis, a social worker, apparently signed an "involuntary petition order with demand" before meeting with Plaintiff.

Plaintiff disputes Dr. Harbin's diagnosis—she asserts that she does not have schizophrenia and, instead, is a transgender woman.  She explained to both doctors on several occasions that she did not need treatment for schizophrenia and preferred to be given hormonal treatment.  Plaintiff alleges that she had several side-effects as a result of the anti-psychotic medication she was "coerced" into taking.  Plaintiff claims that both doctors wrote false information in her medical file and that they never should have had access to her file because no professional relationship existed.  Plaintiff also claims that she was shown an educational video in which nurses administered electroconvulsive therapy.  Plaintiff further states that she was forced to stay in a room with other male individuals.

In addition, Plaintiff requested to receive a medical evaluation by a professional outside the UP Health System Marquette.  She sought this request because she did not believe

---

[1] Plaintiff appears to have been involuntarily committed by a court order. She alleges that the Marquette County Probate Judge made several errors throughout the process.  Plaintiff appears to have sued the judge in state court, but the case may have been dismissed.

that Dr. Harbin and Dr. Wilcox were adequately trained in treating transgendered people. At some point, Plaintiff signed a legal document consenting to her stay at the hospital. However, Plaintiff claims that her signature is void because she signed the document with her non-dominant hand. Plaintiff was eventually released from the UP Health System Marquette and stopped taking all medication prescribed by Dr. Harbin and Dr. Wilcox.

Based on these allegations, Plaintiff asserts several claims in her "six count" complaint. In Count I, Plaintiff alleges that Defendants violated her right to free speech under the First Amendment. Plaintiff asserts she has "a right to be emotional and her discussions and demonstration of herself are methods of communication which are speech protected by the First Amendment . . . ." PageID.55. Plaintiff also states that "by her methods of communication has never deserved detainment, imprisonment, forcible treatment, being disregarded of her freedoms, liberties, equality and tortured by the Defendants['] actions" and that "she never engaged in public speech inconsistent with the educational mission of Norther Michigan University." PageID.55. Plaintiff further states: "Defendants prohibited Plaintiff from speaking to anybody about her beliefs, her discussions about her ideology, and her unlawful imprisonment." PageID.55. Plaintiff also alleges that the anti-psychotic drugs made her "unable to communicate sufficiently as an ordinary citizen by decrease in short [and] long term memory with multiple side effects effect [sic] her speech ability." PageID.56.

In Count II, Plaintiff alleges that Defendants' actions constituted as an unlawful prior restraint of her "First and Fourteenth Amendment Rights of Free Speech." PageID.56. Plaintiff again states that Defendants prohibited her from talking about her "beliefs," ideology," and "unlawful imprisonment." PageID.56. Plaintiff also alleges that Defendants made several

-3-

false statements to Plaintiff's family members, legal professionals, and the judiciary system, including:

> "patient is at profound risk of imminent danger to himself, requiring involuntary psychiatric hospitalization" for" [...] based on his aggression toward others and his difficulty with insight and reality. [ … that] he has previous diagnosis of schizophrenia, [...] as well as a family history of psychosis" for "[ ... ] he does have the strengths of good intelligence and a supportive family" notably "Staff reports that he believes himself to be transgender" and for "He got into somewhat of an altercation at Northern Michigan, was making people uncomfortable there in a classroom. He would not cooperate with the police. He ended being handcuffed and brought to jail. He was not doing well in jail, and so he was brought to the emergency department for an evaluation." finally "Did not believe that he should take psychiatric medications. Patient also indicated that he had a gender identity disorder. He would prefer to be called Elise, and was upset about the hospital's treatment of that, [ ... ] He did not believe that he had schizophrenia, and he was anxious about being in the hospital"

PageID.57 (mistakes and alterations in original). Plaintiff also complains that Defendants prevented her from accessing her laptop while at the hospital.

In Count III, Plaintiff alleges that Defendants' conduct violated her right to procedural due process under the Fifth Amendment and her right to be free from cruel and unusual punishment under the Eighth Amendment. Plaintiff also alleges that Defendants discriminated against her "on the basis of personal beliefs and without sufficient justification, and therefore violates the equal protection component of the Due Process Clause of the Fifth Amendment." PageID.58. Plaintiff states that she was not allowed to leave the UP Health System Marquette and forced to take medication against her will. Plaintiff further states that she was "sexually assaulted by the resulting actions of the Defendants," "denied access to a medically trained doctor in transgender knowledge," and "denied access to treatment required for incorrect hormone levels." PageID.59.

In Count IV, Plaintiff alleges that Defendants violated two international treaties—(1) the United Nations Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("Convention Against Torture"); and (2) the International Covenant on Civil and Political Rights ("ICCPR").  Plaintiff states that she was tortured and persecuted in violation of these international treaties.

In Count V, Plaintiff alleges that Defendants violated 18 U.S.C. §§ 2340, 2340A.

In Count VI, Plaintiff alleges that Defendants violated the Michigan Ethnic Intimidation Act.

Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss any action brought *in forma pauperis* if the action is (1) frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief.  A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement, . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."

*Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). The court has a duty to read a *pro se* plaintiff's complaint indulgently. *See Haines v. Kerner*, 404 U.S. 519 (1972); *Kent v. Johnson*, 821 F. 2d 1220, 1223-24 (6th Cir. 1987).

In the opinion of the undersigned, all of plaintiff's non-constitutional claims against Defendants should be dismissed. First, in Count IV, Plaintiff alleges that Defendants violated two international treaties—(1) the United Nations Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (''Convention Against Torture''); and (2) the International Covenant on Civil and Political Rights ("ICCPR"). Although treaties entered into by the United States become part of the law of the land, the treaties "do not always directly create rights that a private citizen can enforce in court." *Renkel v. United States*, 456 F.3d 640, 642-43 (6th Cir. 2006) (citing U.S. Const. art. VI, cl. 2). As the Sixth Circuit stated:

> Some treaties may, however, directly provide for private rights of action. "Self-executing treaties" are those treaties which do not require domestic legislation to give them the full force of law. *See TWA v. Franklin Mint Corp.*, 466 U.S. 243, 252, 104 S.Ct. 1776, 80 L.Ed.2d 273 (1984); *Goldstar (Panama) S.A. v. United States*, 967 F.2d 965, 968 (4th Cir.1992). Such treaties can create private rights enforceable in court. On the other hand, "non-self-executing" treaties do require domestic legislation to have the force of law. *Auguste v. Ridge*, 395 F.3d 123, 133 n. 7 (3d Cir. 2005). For a non-self-executing treaty, any private claim must be based on a violation of the domestic law implementing the provisions of that treaty. *Raffington v. Cangemi*, 399 F.3d 900, 903 (8th Cir.2005). In other words, federal courts "are bound to give effect to international law and to international agreements, except that a 'non-self-executing' agreement will not be given effect as law in the absence of necessary authority." *Buell v. Mitchell*, 274 F.3d 337, 372 (6th Cir.2001) (quoting Restatement (Third) of Foreign Relations Law § 111 (1987)).

*Id.* at 643 (footnote omitted).

The Convention Against Torture is not self-executing and does not provide a private cause of action. *See Renkel*, 456 F.3d at 643; *Guaylupo-Moya v. Gonzales*, 423 F.3d 121, 133 (2d Cir. 2005); *Warner v. U.S. Postal Serv.*, 2015 WL 5665193, at *4 (W.D. Mich. Sept. 24, 2015). Similarly, the ICCPR is not self-executing and does not provide a private cause of action. *See Bannerman v. Snyder*, 325 F.3d 722, 724 (6th Cir. 2003); *Buell v. Mitchell*, 274 F.3d 337, 372 (6th Cir. 2001). Therefore, Plaintiff's claims under the Convention Against Torture and ICCPR should be dismissed.

Next, in Count V, Plaintiff alleges that Defendants violated 18 U.S.C. §§ 2340, 2340A. Section 2340A criminalizes torture committed by public officials outside of the United States, and Section 2340 provides various definitions. Plaintiff does not allege that any of the events occurred outside of the United States. Moreover, the statute does not provide any cause of action in a civil proceeding. See 18 U.S.C. § 2340B ("Nothing in this chapter shall . . . be construed as creating any substantive or procedural right enforceable by law by any party in any civil proceeding.") Therefore, Plaintiff's claims under 18 U.S.C. §§ 2340, 2340A should be dismissed.

Finally, in Count VI, Plaintiff alleges that Defendants violated the Michigan Ethnic Intimidation Act. The Michigan Ethnic Intimidation statute, Mich. Comp. Laws § 750.147b, provides that "[a] person is guilty of ethnic intimidation if that person maliciously, and with specific intent to intimidate or harass another person because of that person's race, color, religion, gender, or national origin, does any of the following:

(a) Causes physical contact with another person.

      (b) Damages, destroys, or defaces any real or personal property of another person.

      (c) Threatens, by word or act, to do an act described in subdivision (a) or (b), if there is reasonable cause to believe that an act described in subdivision (a) or (b) will occur.

The statute provides a civil a cause of action to recover damages and reasonable attorney fees and costs. Mich. Comp. Laws § 750.147b(3).

      Here, Plaintiff has failed to state a claim under the Michigan Ethnic Intimidation because she did not allege enough facts to establish that Defendants acted "maliciously, with specific intent to intimidate or harass" her based on her gender identity. As evident throughout her complaint, Plaintiff characterizes Defendants' actions as "negligent" or "grossly negligent." (See PageID.1, 3, 4, 8, 9, 10, 13, 18, 22, 24, 25, 26, 32, 34, 35, 36, 37, 38, 39, 42, 43, 45, 46, 53.) Acting "negligently" or "grossly negligent" does not amount to acting "maliciously with specific intent to intimate or harass" another person based on gender. Therefore, in the opinion of the undersigned, Plaintiff's claim under the Michigan Ethnic Intimidation Act should be dismissed.

      Accordingly, the undersigned recommends that Plaintiff's claims in Count IV, Count V, and Count VI be dismissed under 28 U.S.C. § 1915(e)(2) for failure to state a claim on which relief can be granted. Therefore, Plaintiff's remaining claims include her constitutional claims in Counts I-III.[2]

      NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich.

---

[2] It should be noted that Plaintiff's constitutional claims may ultimately fail if the Court later determines that Defendants were not acting under the color of state law as required by § 1983. *Compare Carl v. Muskegon County*, 763 F.3d 592 (6th Cir. 2014) (holding private psychiatrist was a state actor) *with Ellison v. Garbarino*, 48 F.3d 192 (6th Cir. 1995) (holding private psychiatrists were not state actors). However, based on the allegations in the complaint, the undersigned could not make a dispositive determination on this issue at this time.

-9-

LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:  June 29, 2017

                /s/ Timothy P. Greeley
              TIMOTHY P. GREELEY
              UNITED STATES MAGISTRATE JUDGE